STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. FREDERICK KOETTGEN, PLAINTIFF IN ERROR.

Submitted July 1, 1915—Decided November 15, 1915.

1. In the trial of an indictment for maintaining a disorderly house, testimony of the acts and sayings of the frequenters of the place is permissible to show the character of the people and hence of the place where they gather. The language, however, must of itself be disorderly, or must be used in connection with acts which, together with the language, exhibit disorderly conduct.

2. In such cases, proof of the general reputation of those who frequent the place is admissible, but since the defendant cannot be charged with guilt unless he knows, or may be assumed to know, the bad character of those who frequent his place, the general reputation of the frequenters of the place cannot be shown by proof of specific acts of immorality committed away from the immediate vicinity of the place.

On error to the Passaic Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and BERGEN.

For the plaintiff in error, *Ward & McGinnis.*

For the defendant in error, *Michael Dunn.*

The opinion of the court was delivered by

SWAYZE, J. The plaintiff in error was convicted of keeping a disorderly house. The specific charge was the maintenance

of a dance hall, where drunkenness prevailed, foul and vulgar language was used, where prostitutes gathered, and outside of which, and nearby, fights were frequent.

Most of the questions argued relate to the admission of evidence. Some of the assignments of error are supported by exceptions and, although many are not, the questions, or most of them, are legally before us. We need say but a word of the complaint that witnesses were permitted to testify to the age of persons frequenting the place, who knew about it only as they judged from appearances. To reject such evidence would, as Professor Wigmore says, be pedantically over-cautious. *Wigm. Ev.*, § 222. The value of such testimony varies with circumstances, but of that the jury must judge.

That the acts and sayings of persons within the place complained of are admissible is settled in this state. *Bindernagle* v. *State*, 60 *N. J. L.* 307, 312; approved on this point in the Court of Errors and Appeals, 61 *Id.* 259; and, subsequently, applied to evidence of conversations between men and women at a hotel in the absence of the proprietor. *State* v. *Kelly*, 76 *Id.* 576, 578. The same authority justifies the admission of evidence that girls of bad reputation for virtue were frequenters of the place.

The principle upon which evidence of the conduct and conversation of frequenters of the place is permitted, is that it tends to show the character of the people, and hence, of the place where they gather. For this purpose, proof of the use of foul and profane language may sometimes be as important as lewd conduct. The language, however, must of itself be disorderly, or must be used in connection with acts which together with the language exhibit disorderly conduct. *State* v. *Sweet*, 81 *N. J. L.* 250; *State* v. *Littman*, 86 *Id.* 453, 457. Acts and language of that kind, even in the absence of the proprietor, tend to show the actual character of those who frequent the place, and hence, of the place itself. Thieves and prostitutes do not gather in a church. Proof of general reputation of those who frequent the place is also admissible, because a house may be disorderly in the sense of a public nuisance if it is the gathering place of persons of ill-repute.

*Wigm. Ev.*, §§ 78, 204. There is, however, a necessary limitation upon the use of evidence of specific acts and language growing out of the necessity of proving knowledge on the part of the defendant. Since he cannot be charged with guilt unless he knows, or may be assumed to know, the bad character of those who frequent his place, it has been held that bad character cannot be proved by the fact that crimes were committed elsewhere, even though there have been convictions. *State v. Baans,* 77 *N. J. L.* 123. In such cases proof of general reputation is admissible, but general reputation cannot be proved by evidence of specific acts of immorality. The reason is that it is not ordinarily probable that the defendant would know of such specific acts and new issues would be introduced into the case if he had to be ready to defend all his guests against charges of misconduct wherever committed. When, however, the misconduct takes place in or near his place, the situation is different. He may well be held accountable for the preservation of good order within the premises, and the public nuisance caused by acts or language in the immediate neighborhood may exist as the direct result of what goes on inside. A house may be disorderly if it attracts disorderly persons who cause a disturbance even in the public street. *State* v. *Webb,* 25 *Iowa* 235 (per Chief Justice Dillon) ; *State* v. *Pierce,* 21 *N. W. Rep.* (*Iowa*) 195. All the testimony of this character related to what was said and done within the dance hall, or immediately outside, and most of the latter class related to the conduct and condition of persons as they came out the door, or so close thereto that it was apparently a continuation of what had gone on inside. On the question of remoteness, much must be left to the discretion of the trial judge, and we see no reason to think that discretion was abused. As to the language used, an important distinction is that already referred to which was pointed out in State *v.* Sweet. The language must itself be disorderly, or used in connection with acts which, together with the language, exhibit disorderly conduct. It is this distinction which justifies the ruling in *Commonwealth* v. *Harwood,* 4 *Gray* 41. The language which the state offered to

prove showed a specific wrongful act which the witness said had taken place in the house, but the language was not itself disorderly. The report in *Heflin* v. *State*, 20 *N. J. L. J.* 151, states no facts and gives no reasons. Some of its broader statements as given in the law journal were no doubt justifiable as applied to the facts of the case.

The testimony of Stapleton as to his agreement with Kerwin seems to have been meant only to fix a date by reference to a circumstance connected with it in the mind of the witness. We think it was not prejudicial to the defendant.

The charge to the jury that if the defendant participated with others in conducting the place in such an obnoxious manner, and lent his aid to maintaining it, the law charged him as a principal offender, is not complained of as a legal proposition. It is said there was no evidence justifying the submission of the question to the jury. We think there was ample evidence.

The portion of the charge as to which complaint is made in the thirtieth assignment of error is misquoted. There is no reference to Sunday selling in the charge as printed on page 114. If there were, it would have been cured by the court charging the fifth request.

The complaint that the court charged that the jury must find that it was reasonable to believe that the defendant had knowledge, and that was as far as it was necessary for the jury to go, is hypercritical. The judge had told the jury that the defendant must be proved to have known the fact of the existence of the acts which went to make up the elements of a disorderly house; he then added that it need not go to such an extent that the defendant would admit his knowledge on the stand. Then followed the passage complained of. All it could mean was that it was enough if the evidence caused in the minds of the jury a reasonable belief of defendant's knowledge. This is enough. *State* v. *Callahan*, 77 *N. J. L* 685.

The judgment is affirmed.