STATE of Iowa, Appellee,

v.

Ryan WEDEBRAND, Appellant.

No. 98–0787.

Court of Appeals of Iowa.

July 23, 1999.

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, and Michael L. Zenor, County Attorney, for appellee.

Heard by HUITINK, P.J., and STREIT and VOGEL, JJ.

HUITINK, P.J.

Ryan Wedebrand appeals his convictions of first-degree murder and first-degree kidnapping. We affirm.

### I. Background Facts and Procedure.

Ryan Wedebrand was charged with first-degree murder and first-degree kidnapping in the shooting death of Gregory "Sky" Erickson. Under the State's theory, Erickson was kidnapped and murdered by members of the Los Krazy Boyz, an Estherville gang, over a disputed drug debt.

According to the State's evidence, Luis Lua and others assaulted and abducted Erickson in Spencer on June 6, 1997. Although not present at the time Erickson was abducted, Wedebrand joined Lua and others near Estherville, Iowa, later that evening. There, Wedebrand got into a car driven by Ramiro Astello along with Lua and Erickson, whose head was covered with a pillowcase. From Estherville Ramiro Astello drove the group to a rural Iowa location where Erickson was bound, gagged, and repeatedly beaten by Wedebrand, Lua, and Juan and Ramiro Astello. Although Lua pointed a gun at Erickson, he did not shoot Erickson following a "not here" admonition by another member of the group. Erickson was then placed in the trunk of the car, covered by a garbage bag, and driven to an abandoned Minnesota farmstead where he was shot to death by Lua. While in route to Minnesota, Lua told Wedebrand and the others he had enough ammunition for each of them to shoot Erickson. Wedebrand shot Erickson in the hip after Lua fatally shot Erickson in the head. Although others attempted to shoot Erickson after Wedebrand, Lua's gun jammed, and they were unsuccessful.

The record also indicates these events were the subject of extensive media attention and pretrial publicity. Wedebrand's attempt to secure a change of venue citing extensive pretrial publicity was denied.

At Wedebrand's trial, the jury was instructed on three alternative theories for first-degree murder. The jury was instructed as follows:

### JURY INSTRUCTION NO. 15

There are three ways in which the State may prove Murder in the First Degree. Those three ways are described in this Instruction as Alternative "A", Alternative "B", and Alternative "C". The ele-

ments which must be proved in each are somewhat different. The State must prove all of the elements of Alternative "A", Alternative "B", or Alternative "C", but not all the elements of all three Alternatives.

### ALTERNATIVE "A"

*Murder—Premeditation (Aiding and Abetting)*

The State must prove all of the following elements of Murder in the First Degree:

1. On or about the 6th day of June 1997, the defendant aided and abetted in the shooting of Gregory Sky Erickson.

2. Gregory Sky Erickson died as a result of being shot.

3. The defendant acted with malice aforethought.

The defendant acted willfully, deliberately, premeditatedly and with a specific intent to kill Gregory Sky Erickson or with the knowledge that others had such specific intent.

The jury was also given two alternatives for finding Wedebrand guilty of first-degree felony murder.[1]

The jury was also instructed on the limits of Iowa's territorial jurisdiction over this and other public offenses. This instruction provided:

### JURY INSTRUCTION 14A

A person is subject to prosecution in the State of Iowa for an offense only if the offense is committed either entirely in Iowa or partly in Iowa. An offense is committed partly in Iowa if any conduct which is an element of the offense, or any result which constitutes an element of the offense, occurs within Iowa.

The State must prove beyond a reasonable doubt the offense was committed either in part or entirely in Iowa. If you find the State has not proved the offenses charged were committed in part or wholly within the State of Iowa, you must find him not guilty of that charge.

The jury returned a general guilty verdict on first-degree murder without specifying the theory of murder upon which it relied.

### II. Standard of Review.

▆▆▆ We review Wedebrand's territorial jurisdiction challenge for errors at law. *See* Iowa R.App. P. 4. Wedebrand's right to a fair trial by impartial jurors has its underpinnings in our state and federal constitutions. *Irvin v. Dowd,* 366 U.S. 717, 721, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755 (1961); *State v. Siemer,* 454 N.W.2d 857, 860 (Iowa 1990). Accordingly, we review de novo the record made for purposes of challenging the denial of a motion for change of venue. *State v. Gavin,* 360 N.W.2d 817, 818 (Iowa 1985). Reversal is warranted only where the trial court's decision demonstrates an abuse of discretion. *State v. Robinson,* 389 N.W.2d 401, 404 (Iowa 1986).

### III. Change of Venue.

▆▆▆ Pretrial publicity warrants a change of venue when "such a degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Iowa R.Crim. P. 10(10)(b). Prejudice can be shown by publicity attending the trial which is so pervasive and inflammatory prejudice must be presumed or actual prejudice on the part of the jury exists.[2] *State v. Voelkers,* 547 N.W.2d 625, 629 (Iowa App.1996). Whether publicity rises to the level of being presumptively prejudicial depends on the following factors: the nature, tone, and accuracy of the articles; their timing in relation to the

---

1. Wedebrand does not contend either felony murder theory was improperly submitted to the jury.

2. Wedebrand does not contend or attempt to prove he suffered actual prejudice. Therefore our analysis is limited to whether prejudice should be presumed.

trial; and the impact of the publicity on the jurors as revealed through voir dire. *Siemer*, 454 N.W.2d at 860.

■ We find the district court did not abuse its discretion in denying Wedebrand's motion for change of venue. While there was substantial pretrial publicity concerning these events and the defendant, the district court fairly characterized the resulting media coverage as factual, informative, and accurate. We affirm on this issue.

### IV. Territorial Jurisdiction.

■ Generally, jurisdiction necessary to prosecute a public offense rests in the courts of the state where the offense was committed. *State v. Liggins*, 524 N.W.2d 181, 184 (Iowa 1994). Territorial jurisdiction is an essential element of a crime which the state is required to prove beyond a reasonable doubt. *Id.* at 184–85.

Iowa Code section 803 provides:

1. A person is subject to prosecution in this state for an offense which the person commits within or outside of this state, by the person's own conduct or that of another for which the person is accountable, if:

(a) the offense is committed either wholly or partly within this state.

\*      \*      \*      \*      \*      \*

2. An offense may be committed partly within this state if conduct which is an element of the offense or a result of which constitutes an element of the offense occurs within this state.

■ The gist of Wedebrand's jurisdictional argument is that Erickson was shot and died in Minnesota. He argues the remaining elements of premeditated murder, malice aforethought, and specific intent to kill, are not predicate conduct implicating Iowa's jurisdiction under sections 803.1 and 803.2.

■ As noted in Instruction 15, Wedebrand was charged with premeditated first-degree murder as an aider and abettor. A person who aids and abets another in the commission of a public offense is punishable as a principal. Iowa Code § 703.1. Aiding and abetting in a crime occurs when a person assents to or lends countenance and approval to another's criminal act either by active participation or by encouraging it in some manner prior to or at the time of commission. *State v. Lott*, 255 N.W.2d 105, 107 (Iowa 1977). It is essential that the aider and abettor have knowledge of the perpetrator's criminal activity prior to its commission. *State v. Vesey*, 241 N.W.2d 888, 891 (Iowa 1976).

■ If specific intent is an element of the offense charged, "a person may be convicted on a theory of aiding and abetting if the person participates with the requisite intent ... or with the knowledge that the principal possesses the requisite intent." *Lott*, 255 N.W.2d at 109. Proof of the requisite intent or malice aforethought may be accomplished by inferences made from the acts and conduct of the defendant and the means used in doing the wrongful and injurious acts. *See State v. Olson*, 373 N.W.2d 135, 136–37 (Iowa 1985) (citations omitted); *State v. Nunn*, 356 N.W.2d 601, 603 (Iowa App.1984).

We are unable to reconcile Wedebrand's argument with the plain language of sections 803.1 and 803.2. Section 803.1 expressly provides for prosecution of offenses committed partially within or outside of Iowa. As an alleged aider and abettor, Wedebrand was subject to prosecution in Iowa under the "conduct ... of another for which the person is accountable" language of section 803.1. Moreover, evidence of Wedebrand's presence, encouragement, and participation in Erickson's beating in Iowa is conduct from which the principal's specific intent to kill, malice aforethought, and Wedebrand's knowledge thereof may be inferred. Because Wedebrand can be held accountable for conduct in Iowa which constitutes an essential element of first-degree murder,

Iowa's territorial jurisdiction to prosecute this offense was properly invoked.[3] We affirm on this issue.

**AFFIRMED.**

3. Because the State has not raised the issue, we do not determine if Wedebrand was prejudiced by Alternative A. See *Schrier v. State*, 347 N.W.2d 657, 666 (Iowa 1984)(finding defendant could not demonstrate prejudice from submission of premeditated murder instruction in light of defendants failure to challenge an alternative felony murder instruction).